IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| UNITED STATES OF AMERICA, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Crim. No. 10-22-SLR |
| QUENTIN STANFORD, | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington this 23rd day of January, 2012, having reviewed the papers submitted in connection with the issue of whether defendant should be characterized for sentencing as an Armed Career Criminal;

IT IS ORDERED that he should not, for the reasons that follow:

1. On May 4, 2011, defendant was convicted of being a felon in possession of a firearm, pursuant to 18 U.S.C. § 922(g). Defendant has three prior felony convictions: (1) in 1982, unlawful imprisonment in the first degree, 11 Del. C. § 782; (2) in 1999, aggravating menacing; and (3) in 2001, aggravating menacing. Defendant does not dispute that his two prior convictions for aggravating menacing qualify as a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(ii) of the Armed Career Criminal Act ("ACCA"). Nor does defendant dispute that the age of his unlawful imprisonment conviction prohibits the court from considering this conviction under the ACCA. *See United States v. Preston*, 910 F.2d 81, 89 (3d Cir. 1990). The only issue is whether defendant's

conviction for unlawful imprisonment is a "violent felony" as defined by the ACCA. It is the government's burden to demonstrate, by a preponderance of the evidence, that defendant qualifies as an Armed Career Criminal under the ACCA for purposes of sentencing. *See United States v. Mack*, 229 F.3d 226, 233 (3d Cir. 2000).

2. The definition of "violent felony" under the ACCA is "any crime punishable by imprisonment for a term exceeding one year [involving] conduct that **presents a serious potential risk of physical injury to another**." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). "A person is guilty of unlawful imprisonment in the first degree [under Delaware law] when the person knowingly and unlawfully restrains another person under circumstances which **expose that person to the risk of serious physical injury**." 11 Del. C. § 782 (emphasis added). When reading only the words of the two statutes, the government's view that a conviction under 11 Del. C. § 782 qualifies under the ACCA as a violent felony makes imminent sense.

3. However, the appellate courts have weighed in on the issue and thrown substantial doubt on the government's reasonable interpretation of the statutes under the facts of record. More specifically, the United States Court of Appeals for the Second Circuit, in *Dickson v. Ashcroft*, 346 F.3d 44 (2d Cir. 2003),[1] has interpreted New York's unlawful imprisonment statute (virtually identical to Delaware's statute) as being "divisible into two crimes: the unlawful imprisonment of a competent adult, which cannot be accomplished without use or threat of force . . .; and the unlawful

---

[1]The decision in *Dickson*, authored by now Justice Sotomayor, involved the question of whether an alien was removable by reason of a prior felony conviction that had "as an element the use or threatened use of physical force, or 'by its nature' involves a substantial risk of the use of physical force." 346 F.3d at 48.

2

imprisonment of an incompetent person or child under sixteen, which can be accomplished without force . . . ." The reasoning of the Second Circuit in *Dickson* proceeds as follows:

  a. In determining whether an alien is removable by reason of a prior conviction for a crime of violence under the Immigration and Nationality Act ("INA," codified at 8 U.S.C. § 1227(a)(2)(A)(iii)), the Court applied a "categorical approach" to criminal statutory interpretation. *See Dalton v. Ashcroft*, 257 F.3d 200, 204-05 (2d Cir. 2001). "The categorical approach focuses on 'the intrinsic nature of the offense rather than on the factual circumstances surrounding any particular violation.'" *Dickson*, 346 F.3d at 48 (citing *Dalton*, 257 F.3d at 204). "Where, however, a criminal statute encompasses diverse classes of criminal acts - some of which would categorically be grounds for removal and others of which would not - we have held that such statutes can be considered 'divisible' statutes.'" *Dickson*, 346 F.3d at 48 (citations omitted). "In reviewing a conviction under a divisible statute, the categorical approach permits reference to the record of conviction for the limited purpose of determining whether the alien's conviction was under the branch of the statute that permits removal." *Id.* at 48-49 (citations omitted).

  b. Consistent with the Delaware statute, New York's state criminal code provides that "[a] person is guilty of unlawful imprisonment in the first degree when he restrains another person under circumstances which expose the latter to a risk of serious physical injury." NYPL § 135.10. *See* 11 Del. C. § 782. Consistent with the Delaware statute, the word "restrain" is further defined as follows:

3

> "Restrain" means to restrict a person's movements intentionally
> and unlawfully in such manner as to interfere substantially with
> his liberty by moving him from one place to another, or by
> confining him either in the place where the restriction commences
> or in a place to which he has been moved, without consent and with
> knowledge that the restriction is unlawful. A person is so moved or
> confined "without consent" when such is accomplished by (a) physical
> force, intimidation or deception, or (b) any means whatever, including
> acquiescence of the victim, if he is a child less than sixteen years
> old or an incompetent person and the [custodial parent or institution]
> has not acquiesced in the movement or confinement.

NYPL § 135.00(1). See 11 Del. C. § 786(a).

        c. The Court concluded that "the elements of unlawful imprisonment in the first degree always include not only intent on the part of the defendant but also substantial interference with the victim's liberty and that the victim be at risk of serious physical injury;" i.e., the offense is one that "'by its nature' involves a substantial risk that force may be used, and thus satisfies the requirements" of the INA. *Dickson*, 346 F.3d at 50-51. The Court went on to hold that, "whether accomplished by force, intimidation, or deception, the unlawful imprisonment of a competent adult under New York law always involves either the use or risk of force, and will always be a crime of violence" pursuant to the INA. *Id.* at 51.

        d. In *Dickson*, having deemed New York's unlawful imprisonment statute divisible into two crimes, one removable as a crime of violence and one not, it was appropriate to consult the petitioner's record of conviction for the limited purpose of determining whether he was convicted of the unlawful imprisonment of a competent adult. *Id.* at 52. The Court specifically held that the only records that should be

4

consulted for this purpose were those relating to his conviction, not his sentencing.[2] The case was remanded to allow the administrative agency "to make the legal determination in the first instance whether documents that are properly considered part of the record of conviction establish that Dickson is removable." *Id.* at 55. *See also United States v. Gilbert*, 464 F.3d 674 (7th Cir. 2006) (because the record did not disclose whether defendant was convicted of a form of criminal confinement that required a finding of force or threat of force, "there is nothing about the offense as defined that poses an inherent risk of serious physical injury to another").

4. The government argues that "[t]he criminal act of physically restraining another person is an inherently violent act," citing *United States v. McMiller*, 376 Fed. Appx. 199, 202-203 (3d Cir. 2010), and *United States v. Smith*, 284 Fed. Appx. 943, 945-46 (3d Cir. 2008), as support thereof. Both of these cases were decided in the context of revocation proceedings and neither addressed 11 Del. C. § 782.[3] In *Smith*,

---

[2]The Court explained in this regard that documents such as the Pretrial Services Report ("PSR") include, e.g., factual narratives "prepared by a probation officer on the basis of interviews with prosecuting attorneys, police officers, law enforcement agents, etc." and, therefore, "may include allegations that were not proven at trial, as well as alleged facts that would have been inadmissible at trial." *Id.* at 54. The Court characterized such as posing "potential reliability problems," *id.*, and identified records related to the conviction itself, e.g., the judgment of conviction or the plea colloquy transcript, as more properly considered. This approach is more consistent than not with the "categorical approach" as explained in such cases as *Sykes v. United States*, 131 S. Ct. 2267, 2272 (2011) ("Under this approach, we look only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction.").

[3]*McMiller* involved Georgia's false imprisonment statute, Ga. Code Ann. § 16-5-41(a), which provides:

> A person commits that offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines,

5

the Third Circuit concluded "that the conviction satisfies the definition set forth in the second prong of U.S.S.G. § 4B1.2(a). 'Knowingly' 'hold[ing]' a person 'involuntarily' involves an inherent risk of physical injury. Even if the person is not held by force, there is a strong likelihood that a person would use force to resist being held, and physical injury would ensue." 284 Fed. Appx. at 945. In *McMiller*, the Third Circuit embraced the district court's "note" that, "[w]hile the use of physical force is not an element of this crime, false imprisonment . . . involves conduct that presents a serious potential risk of physical injury to another [because] . . . [e]ven if [a] person is not held by force, there is a strong likelihood that a person would use force to resist being held and physical injury would ensue.'" 376 Fed. Appx. at 203. The Third Circuit in *McMiller* went on to review Georgia cases in order to confirm that convictions under Georgia's false imprisonment statute involved scenarios in which the offense conduct posed a serious risk of potential injury, and also reviewed the evidence adduced at the revocation hearing.

5. Under the circumstances at bar, I conclude that the Second Circuit in *Dickson* embraced the appropriate analytical framework for Delaware's false imprisonment statute. Therefore, I reject the government's argument that said statute is an "inherently violent offense" under the ACCA. Having found that Delaware's false imprisonment statute, like New York's comparable statute, is divisible, it would be appropriate to review the records of conviction to determine under which prong of the

---

or detains such person without legal authority.

*Smith* involved Pennsylvania's law of "knowingly . . . hold[ing] another in a condition of involuntary servitude." 18 Pa.C.S. § 2902(a)(2).

6

statute defendant was convicted. Unfortunately, the records of conviction are of no help in this endeavor, as neither the criminal docket, the plea agreement, or the judgment shed any light on the facts underlying the conviction. (D.I. 69, ex. A) Consistent with *Dickson*, I decline to base my decision on the factual narration contained in defendant's PSR.

6. For the reasons stated above, therefore, I conclude that the government has not carried its burden to prove that defendant was convicted of a crime of violence under the ACCA.

United States District Judge